UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JACENTA R. GRIFFIN,

Plaintiff,

-vs-                                                  DECISION AND ORDER

ANTHONY DELVECCHIO, SALVATORE V. AMATO,               16-CV-6029-CJS
MICHAEL L. CIMINELLI, and CITY OF ROCHES-
TER,

Defendants.

---

## APPEARANCES

For Plaintiff:                    Charles Francis Burkwit, Esq.
                                  Burkwit Law Firm, PLLC
                                  16 East Main Street Suite 450
                                  Rochester, NY 14614
                                  (585) 546-1588

For Defendants:                   Patrick Beath, Esq.
                                  Spencer Ash, Esq.
                                  City of Rochester
                                  30 Church Street Suite 400A
                                  Rochester, NY 14614
                                  (585) 428-6812

## INTRODUCTION

**Siragusa, J.** This is an action brought by plaintiff Jacenta R. Griffin ("Griffin") against

individual police officers Anthony Delvecchio ("Delvecchio") and Salvatore V. Amato ("Ama-

to") as well as Michael Ciminelli, Chief of the Rochester Police Department ("Chief") and the

City of Rochester, New York ("City"). Griffin alleges that the officers used excessive force

against her and that the Chief and City were negligent in training the officers. Before the

Court is Defendants' application, filed on February 9, 2016, ECF No. 4, seeking dismissal of

some of the causes of action. For the reasons stated below, the application is granted.

## BACKGROUND

Griffin's complaint, ECF No. 1, alleges the following operative facts, which the Court

presumes are true for the purposes of adjudicating the motion.

21.     On February 2, 2015 at approximately 6:45 p.m., Defendants Delvecchio and Amato were dispatched to Plaintiff Jacenta R. Griffin's home located at 74 Meredith Street, Rochester, New York 14609

22.     Defendants Delvecchio and Amato were dispatched to Plaintiff Jacenta R. Griffin's home in response to a mental health call to 911 which was made by Plaintiffs mother, Delories Griffin.

23.     Plaintiff Jacenta R. Griffin's mother called 911 fearing for Plaintiff's wellbeing and requested an ambulance come to her home and transport Plaintiff to Rochester General Hospital.

24.     When Defendants Delvecchio and Amato arrived at Plaintiff Jacenta R. Griffin's home, Plaintiff was outside her residence at the front entrance where she was immediately placed in handcuffs and placed in the back seat of the police vehicle.

25.     When Plaintiff was handcuffed and placed in the back seat of the police vehicle, she did not have any injury to her facial areas.

26.     After Plaintiff was handcuffed and placed in the back seat of the police vehicle, Plaintiff's brother, Shawn Griffin, asked Defendants Delvecchio and Amato where they were taking Plaintiff since he and his mother had requested an ambulance, not a police vehicle, to transport Plaintiff to Rochester General Hospital.

27.     Defendants Delvecchio and Amato did not respond to the question made by Plaintiff's brother and drove away with Plaintiff.

28.     After Defendants Delvecchio and Amato (hereinafter "the Defendant officers") drove away from Plaintiff's home, Plaintiff's mother, Delories Griffin, called 911 to inquire why an ambulance was never sent to Plaintiff's home and asked where Plaintiff was going to since the Defendant officers drove off with Plaintiff.

29.     During the phone call to 911, Plaintiff's mother was informed that the Defendant officers had "canceled the ambulance."

2

Case 6:16-cv-06029-CJS-MWP   Document 13   Filed 06/13/16   Page 3 of 11

30.     While the Defendant officers were transporting Plaintiff to Rochester General Hospital, the police vehicle pulled over to the side of the road and stopped.

31.     When the police vehicle stopped on the side of the road, the Defendant officers got out of the car and stated "is she gonna shut the fuck up?. . . no she isn't gonna shut up."

32.     While Plaintiff was still handcuffed with her hands behind her, the rear door of the police vehicle opened and Defendant Delvecchio and/or Defendant Amato punched or elbowed Plaintiff's mouth causing her front tooth to be knocked out and causing her lip to be split open.

33.     After Plaintiff's front tooth was knocked out and her lip was split open, Defendant Delvecchio and/or Defendant Amato violently punched Plaintiff in her face, left eye, head and other areas of her body thus causing Plaintiff to lose consciousness until she eventually arrived at Rochester General Hospital.

34.     When Plaintiff arrived at Rochester General Hospital Emergency Department, Defendant Delvecchio and/or Defendant Amato stated to the emergency staff "she is going to need stitches."

Compl. ¶¶ 21–34. Most of the remaining allegations are either made on information and belief, without any stated basis for the information, or are conclusions drawn from the facts recited in the above-quoted paragraphs.

Griffin's complaint contains the following causes of action: (I) alleging that Delvecchio, Amato, and the City used excessive force in violation of Griffin's Fourth Amendment rights; (II) alleging that Delvecchio and Amato conspired to violate Griffin's Fourth and Fourteenth Amendment  rights; (III) alleging the City maintained a custom or policy of inadequate training of its police officers; (V)[1] alleging a claim that the Chief and the City failed to properly supervise and train its police officers; (VI) alleging a claim of battery against Delvecchio and Amato; (VII) alleging Delvecchio and Amato intentionally assaulted Griffin; (VII) alleging that Delvecchio and Amato intentionally inflicted emotional distress on Griffin; (VIII) alleging

---

[1] The complaint skips Roman numeral 4.

3

that Delvecchio and Amato negligently inflicted emotional distress on Griffin; and (VIII)[2] al-

leging all Defendants were negligent.

Defendants move to dismiss Griffin's claims of conspiracy, municipal liability, super-

visory liability, intentional and negligent infliction of emotional distress, negligent hiring, re-

tention, and training, and negligence.

## STANDARD OF LAW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts

to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Twombly* holding ap-

plies to all complaints, not just those sounding in antitrust). Although all allegations con-

tained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclu-

sions." *Iqbal*, 556 U.S. at 678. A claim will have "facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678.

## ANALYSIS

### *Conspiracy Claim (Count I)*

To allege a conspiracy claim pursuant to 42 U.S.C. § 1983, "a plaintiff must show:

(1) an agreement between two or more state actors or between a state actor and a private

entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d

Cir. 1999). The statutory definition is as follows:

> If two or more persons in any State or Territory conspire, or go in disguise on
> the highway or on the premises of another, for the purpose of depriving, either
> directly or indirectly, any person or class of persons of the equal protection of
> the laws, or of equal privileges and immunities under the laws, or for the pur-

---

[2] The complaint has two counts numbered with a Roman numeral 8. The Court has
assumed that the second of those is actually count 9.

pose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (1871)

The conspiracy alleged here involves two officers of the same Rochester City Police Department. As such, "where the alleged conspirators all consist of employees, officers, or agents of one corporation, the 'intracorporate conspiracy' doctrine bars such claims." *Sharp v. Town of Greece*, No. 09-CV-6452, 2010 WL 1816639, at *7 (W.D.N.Y. May 3, 2010).

Griffin relies on the exception to this doctrine as stated in *Perrin v. Canandaigua City Sch. Dist.*, No. 08-CV-6153L, 2008 U.S. Dist. LEXIS 95280, 4–5 (W.D.N.Y. Nov. 21, 2008): "'[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity,' *Quinn v. Nassau County Police Dep't*, 53 F.Supp.2d 347, 360 (E.D.N.Y. 1999), a complaint that does not set forth factual allegations showing that any of the individual defendants acted with independent motives is subject to dismissal for failure to state a claim." Griffin argues that because Delvecchio and Amato allegedly assaulted her "while her hands were handcuffed behind her while seated in the police vehicle, it is implied that the Defendant officers had 'motive independent from the corporation.'" Pl.'s Mem. of Law 10–11, Mar. 29, 2016, ECF No. 10-1. The Court reads the complaint to imply that Delvecchio and Amato,

while in the process of transporting Griffin as a result of a mental health arrest, are alleged to have used excessive force to quiet her so they could finish the transport in silence. This hardly alleges the officers were pursuing personal interests separate from the entity, since their transport of Griffin was wholly related to their duties imposed by the police department.

### Monell Claims (Counts III and V)

The general legal principles concerning *Monell* liability are well settled:

> Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality. Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee.

*Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citations omitted). Griffin alleges "upon information and belief," without any stated factual basis, that "Delvecchio and Amato were never reprimanded, suspended or terminated from their employment." Compl. ¶ 35. Griffin further concludes that based upon her alleged experience with Delvecchio and Amato, that both had "inadequate training and supervision regarding arrests and reasonable use of force . . . ." Compl. ¶ 36. From this conclusion, Griffin then asserts that the Chief and the City have "failed to adequately train and supervise their subordinates . . . ." Compl. ¶ 38. Thus, from the single incident on February 2, 2015, Griffin indicts the entire police force and its chief, along with the municipality. Such a broad conclusion from a single incident is insufficient to meet the requirements of a *Monell* claim to show a custom, practice, or policy of the municipality.

Griffin's claim amounts to one of deliberate indifference by the City and the Chief regarding the officers' training. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In *Connick*, Justice Thomas further wrote for the majority:

To satisfy [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S. Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S. Ct. 1197.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.,* 520 U.S., at 410, 117 S. Ct. 1382. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.,* at 407, 117 S. Ct. 1382. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton,* 489 U.S., at 395, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities ...." *Id.,* at 392, 109 S. Ct. 1197; see also *Pembaur, supra,* at 483, 106 S. Ct. 1292 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where— and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").

*Connick,* 563 U.S. at 61–2.

As the Supreme Court observed in *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), "it is . . . difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate."

Griffin's allegations of inadequate training fail to allege any plausible factual basis for concluding that the Chief of Police or City deliberately chose to ignore training officers on use of force. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Board of the County Commissioners of Bryan County v.*

*Brown,* 520 U.S. 397, 409 (1997)). The Court determines that Griffin's allegations fail to plausibly plead a *Monell* claim of inadequate training.

### Supervisory Liability Claim (Count V)

In Griffin cause of action labeled Count V, she alleges that the Chief and the City "have condoned a pattern of brutality committed by City of Rochester police officers" through maintenance of "official policies, customs or practices." Compl. ¶ 67.

> "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Id. (quoting *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)).

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Griffin relies principally on the allegations of paragraph 68 of the complaint to allege liability. Pl.'s Mem. of Law 17. Paragraph 68 alleges the following: "68. Defendants City of Chief have maintained and permitted the aforedescribed practices, policies and customs, were aware of widespread abuses of power and use of excessive force by City of Rochester police officers and failed to take proper measures to investigate and/or discipline said officers." The allegations in paragraph 68, and the allegations referred to by that paragraph, contain only conclusions. Griffin's allegations would have "facial plausibility" if she had plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. Griffin has not done this here with respect to the claim in Count III.

### Intentional Infliction of Emotional Distress (Count VII)

The tort of intentional infliction of emotional distress, "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). Griffin argues that based on the officers' decision to cancel the ambulance and transport her themselves to Rochester General Hospital, they "undertook a specific duty of care," which they breached by allegedly beating her while she was handcuffed and in the back of their car. Pl.'s Mem. of Law 18–19.

Defendants raise a public policy bar against claims of intentional inflection of emotional distress claims against governmental entities, which Plaintiff does not address. *Afifi v. City of New York*, 104 A.D.3d 712, 713 (N.Y. App. Div. 2d Dep't 2013) ("Public policy bars claims alleging intentional infliction of emotional distress against governmental entities.") (citations omitted). The Court also agrees with Defendants' argument that this claim is duplicative of the assault and battery claims.

### Negligent Hiring, Retention, and Training Claims (Count VIII, Compl. ¶¶ 111–23)

The Second Circuit in *Velez v. City of New York*, 730 F.3d 128, 136-137 (2d Cir. 2013), set out the requirements for claims of negligent hiring, retention, and training under New York law:

> To maintain a claim against a municipal employer for the "negligent hiring, training, and retention" of a tortfeasor under New York law, a plaintiff must show that the employee acted "outside the scope of her employment." *Gurevich v. City of New York*, No. 06 Civ. 1646 (GEL), 2008 U.S. Dist. LEXIS 1800, 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008) (internal quotation marks omitted) (collecting cases). If the employee acted within the scope of her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of respondeat superior. *See Karoon v. N.Y.C. Transit Auth.*, 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (1st Dep't 1997).

*Velez*, 730 F.3d at 136–37. However, Griffin alleges that Delvecchio, Amato, and the Chief "were acting [at all times] within the course and scope of their empoyment...in performance of the acts herein alleged." Compl. ¶ 18.

### Negligent Inflection of Emotional Distress (Count VIII, Compl. ¶¶ 103–10) and Negligence (Count VIII, Compl. ¶¶ 111–23)

Griffin has alleged that Delveccho and Amato both acted intentionally when they allegedly used excessive force against her. *See* Compl. ¶¶ 81, 88, 89. As an alternative theory, Griffin alleges that the officers negligently inflicted physical force and injury. Compl. ¶ 112. "New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently." *Mazzaferro v. Albany Motel Enterprises, Inc*., 127 A.D.2d 374, 376 (N.Y. App. Div. 3d Dep't 1987). The allegations against Delvecchio and Amato cannot be read as anything but intentional conduct. Should evidence arise at trial that the officers acted negligently and not intentionally, Griffin may resort to Federal Rule of Civil Procedure 15(b)(1) to request to amend her complaint. 3-15 MOORE'S FEDERAL PRACTICE § 15.18 (Matthew Bender 3d ed.). Moreover, Griffin failed to allege that Defendants owed her a special duty, therefore her negligence claim would in any event fail. *See McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009) (general duty not sufficient), *and Pelaez v. Seide*, 2 N.Y.3d 186, 198 (2004) (discussing formation of a special duty). Finally, "the allegations of negligent inflection of emotional distress were duplicative of the viable portions of the subject causes of action." *Afifi*, 104 A.D.3d at 713.

CONCLUSION

For the foregoing reasons, Defendants' application for partial dismissal, ECF No. 4, is granted. All *except* the following Counts of the complaint are dismissed: (**I**) alleging that Delvecchio, Amato, and the City used excessive force in violation of Griffin's Fourth Amendment rights; (**VI**) alleging a claim of battery against Delvecchio and Amato; and (**VII**) alleging Delvecchio and Amato intentionally assaulted Griffin.

IT IS SO ORDERED.

DATED:        June 13, 2016
              Rochester, New York

                            /s/ Charles J. Siragusa
                            CHARLES J. SIRAGUSA
                            United States District Judge